## MAGEE *v.* STATE.

(In Banc. Nov. 11, 1946. Suggestion of Error continued for further consideration Dec. 9, 1946. Suggestion of Error sustained Jan. 27, 1947.)

[27 So. (2d) 767. No. 36158.]

M. Ney Williams, of Raymond, for appellant.

**Leon L. Shelton & H. C. Stringer,** of Jackson, for appellant.

**Greek L. Rice,** Attorney General, by **R. O. Arrington,** Assistant Attorney General, and **Ross R. Barnett,** of Jackson, for appellee.

Leon L. Shelton and H. C. Stringer, both of Jackson, and M. Ney Williams, of Raymond, for appellant, on suggestion of error.

**Greek L. Rice**, Attorney General, by **R. O. Arrington**, Assistant Attorney General, and **Ross R. Barnett**, of Jackson, for appellee, on suggestion of error.

Argued orally by **H. C. Stringer**, for appellant, and by **Ross R. Barnett**, for appellee.

**Roberds, J.,** delivered the opinion of the Court.

Magee was convicted of the murder of Ernest Conn, sentenced to death, and he appeals.

A former appeal was before this Court, Magee v. State, 198 Miss. 642, 22 So. (2d) 245.

A motion for continuance because of the absence of Frankie Robinson, a witness, was denied by the lower court. Appellant says that was error. Frankie testified at first trial. The record discloses that her evidence was merely cumulative, and it is not shown that she could be produced at a subsequent trial, and on the motion for a new trial no affidavit of this witness was produced showing what her testimony would be, nor was there any showing that it was impracticable to produce such affidavit. Under these circumstances the Court was correct in overruling the motion. Samuels v. State, 153 Miss. 381, 120 So. 920; Hodgkin v. State, 172 Miss. 297, 160 So. 562; Lamar v. State, 63 Miss. 265; Henderson v. State, 187 Miss. 166, 192 So. 495.

Appellant introduced as a character witness one W. L. Kitchen, who testified that Magee's general reputation for peace or violence was good. In another place he said, "So far as I know it was good." On cross-examination Kitchen was asked, "State whether or not it isn't true that Sandy Magee, this boy sitting right here, had reputation out there, general reputation in the community where he lived for getting into shooting scrapes." Objection to this question was overruled. The witness answered, "I heard of him being in a shooting scrape." Appellant says this action of the court was reversible error. The question and answer were competent here. If Magee had the general reputation of engaging in shooting scrapes, so known to the witness, that fact would bear not only upon the accuracy of the witness's conclusion that his reputation for peace or violence was good, but also upon the witness's credibility in so stating.

In the opinion in the former case [198 Miss. 642, 22 So. (2d) 246], this Court stated that: ''It is permissable on cross-examination, when testing the good faith and credibility of a character witness, to ask if he has not heard rumors or reports in the community of particular acts of violence imputed to the defendant which are inconsistent with the testimony then being given by the witness regarding the good reputation of the accused as to the particular trait of character inquired about, * * * and to ask whether or not he had heard of specific charges of misconduct made against the defendant in the community * * *,'' although it would be error to go into details of the specific incidents. The question and answer under discussion came within the above rule. Smith v. State, 112 Miss. 802, 73 So. 793.

The main contention upon which Magee relies for reversal is that, under the evidence in the case, the jury should not be permitted to find him guilty of any crime, but if so, not a greater crime than manslaughter. He admitted that he shot and killed Conn, but he said he did so in self-defense. Without undertaking to detail the evidence, it is enough to say that the testimony on the part of the State amply supports the verdict of murder; that on the part of Magee would have sustained a conviction of manslaughter or an acquittal. The State obtained an instruction submitting to the jury the question of murder or manslaughter. Defendant's instructions explained the distinction between murder and manslaughter, and asked for an acquittal. Under the instructions and the evidence the jury could have returned a verdict of murder, manslaughter or not guilty. It found appellant guilty of murder, and there being sufficient evidence to sustain that verdict, the contention must be overruled.

The judgment will be affirmed, and Friday, December 20, 1946, is set for the date of execution.

Affirmed.

**Sydney Smith, C. J.,** did not participate in this decision.

**Griffith, J.,** delivered a specially concurring opinion.

The opinion of the Court by Judge Roberds is correct in the statement that, "Under the instructions and the evidence the jury could have returned a verdict of murder, or manslaughter or not guilty," and the main opinion is correct, further, in the conclusion that since there is enough evidence to sustain the conviction of murder, and inasmuch as it cannot be said that the verdict is against the overwhelming weight of the evidence, it is not within our province as an appellate court to interfere.

But to my mind the verdict is against the preponderance of the evidence. There were four eye-witnesses to the actual homicide, and only one of the four witnesses sustains the verdict as rendered, and his version contains two outstanding infirmities. It is undisputed that three shots were fired by appellant, and we may accept the State's theory that it was the third shot that caused death. It is undisputed that this shot ranged upward, striking no bone in its course, and this would force the conclusion that the probabilities were that the shot was fired from a position below the point where the bullet struck the deceased, which would corroborate the testimony of the other three witnesses that appellant was on his knees, with the deceased standing over him, and would thus disprove what Stokes said as to the positions of the parties, and would displace his version as having any great probative force.

Stoke's testimony is also that appellant's brother had hold of the deceased and was struggling with him, when and while all three of the shots were fired by appellant, the first shot, according to Stokes, being made when appellant was ten feet away from the deceased and appellant's brother, and that thereupon appellant closed in, firing the next two shots as he approached the other two men. In other words, it was Stoke's version that in the

semi-darkness appellant was firing at the deceased when and while the positions of the deceased and appellant's brother made it of equal likelihood that the shots would strike the brother rather than the deceased, a story which requires the exercise of some considerable fortitude—too much for me—to believe.

There are other discrepancies in the State's case, but what has been said is enough to disclose that, even if a verdict of murder can be squeezed through, it is not a case for the infliction of the death penalty, and to so state ought to be a privilege of the appellate court in the interest of ultimate justice, even if the Court itself cannot directly intervene.

**L. A. Smith, Sr., J.,** concurs in the above.

**Per Curiam,** on suggestion of error.

This case has been under earnest consideration and reconsideration by us since October 28, 1946. On November 11, 1946, the judgment and sentence was affirmed, but with reluctance on the part of the majority of the members of the Court, two of whom expressly voiced that reluctance by a specially concurring opinion. Upon the coming in of the suggestion of error and a reconsideration of the case upon it, that reluctance was found to have grown to something more than reluctance, two of the members, other than the two who expressed themselves in the specially concurring opinion, having come to have some serious doubt whether the charge should be allowed to stand for a higher offense than manslaughter. We thereupon set aside the judgment of affirmance and called for a reply to the suggestion of error, and this having come in, together with appellant's rejoinder to the reply, we have again gone over the case, and have come to the final conclusion that the verdict should be set aside and a new trial awarded.

When the case was first here, Magee v. State, 198 Miss. 642, 22 So. (2d) 245, it was supposed by us that the death sentence was carried by the verdict because of the erroneous and inflammatory evidence dealt with by the Court on that appeal. It did not occur to us that with that evidence eliminated, any properly selected jury, wholly without bias, would again return a verdict authorizing the infliction of the death penalty. All of us concur that the present record does not justify the death penalty, some of us feeling that the execution of a death sentence under the record in this case would be a reproach upon justice.

This is no case of an assassination, or of a deliberate and premeditated urge to murder, or a homicide committed in the furtherance of another crime, or anything of the like. A considerable number of negroes were gathered together after night in the colored department of the restaurant operated by deceased and some of them were drunk or drinking, among whom was a brother of the appellant. This brother had a pistol of small calibre, and appellant, in order that his brother might do no harm with the weapon, took it from him. Appellant had no purpose, and manifested none, to use the pistol himself nor to engage in any altercation, and he did nothing to provoke any altercation. He had simply taken the pistol and put it in his pocket. But deceased, under a mistaken impression, jumped over the counter armed with a large calibred pistol, and intruded himself into what was going on, with the result that a general melee immediately broke out, with more than ordinary confusion; which progressed in a continuous and unbroken course of events, until within an extremely short time the deceased, the appellant, and others found themselves outside the restaurant on or just beyond the sidewalk, and in semi-darkness.

The version of the appellant, supported by other witnesses, was that at the point last mentioned appellant, as a consequence of the melee, was down on his knees, and that the deceased was standing almost immediately over

him, trying to use the large pistol above mentioned, but which, according to the undisputed proof, had become jammed, although this was unknown to appellant, and that from his position on his knees appellant fired three shots from the pistol which he had taken from his brother, as already stated. The conviction, with sentence of death, rests upon the contrary version of Stokes, the only witness for the State who testified to that version, and his story was that appellant was standing when he fired the three shots, first about ten feet from the deceased, the second when appellant had made a nearer approach, and the third and fatal shot when appellant, still standing, had come to a point almost against the body of the deceased.

The State, in its reply to the suggestion of error, in its effort to meet the undisputed physical fact that the bullet causing the fatal wound ranged upward, has been compelled to resort to conjecture, nor has it satisfactorily met the second point mentioned in the specially concurring opinion, besides which there are other discrepancies in Stokes' testimony emphasized in appellant's rejoinder which it seems to the majority of us has not been, and cannot be, adequately met upon the present record, all of which leads us to the stated final conclusion, and after the prolonged reconsideration mentioned, that a death sentence should not be allowed to stand on the doubtful and undependable and unsupported testimony of this witness, Stokes, and that the verdict should be set aside as against the weight of the evidence, and it will be so ordered. We do not pursue the facts in further detail, since the case may be retried.

The suggestion of error is sustained, the verdict and judgment is reversed and the case remanded.

Reversed and remanded.

**Sydney Smith, C. J.,** did not participate in this decision.

**Griffith, J.**, delivered a specially concurring opinion, on suggestion of error.

While I concur in the opinion per curiam this day delivered, it is my judgment that when a jury in a homicide case returns a verdict with the death sentence and that sentence is so grossly unjustifiable under the facts as is the case here, the Court should consider this as all the evidence necessary that the verdict was the product of prejudice or bias or passion or some other inadmissible motive or consideration, contrary to the due process clauses of state and federal constitutions, which require impartiality in judicial tribunals, and that this should be announced as a rule of adjudication applicable to this and to all homicide cases in the future. If this were done in this case, nothing further need be said.

**Roberds, J.**, delivered a dissenting opinion on suggestion of error.

I am naturally averse to balancing my judgment against the collective judgment of my brethren, but intellectual honesty compels me to say, after a review of this record, that I think the guilt or innocence of the defendant herein was a question for the jury.

The testimony of the State showed Magee to be guilty of murder; that of the defendant made a case of self-defense. The State relied mainly upon the testimony of one Stokes. It is not shown that he was in any way biased in favor of the State. In fact, being of the same race as the defendant, presumably he felt kindly towards him, nothing appearing to the contrary. In addition to Stokes' testimony, there were physical facts supporting the contention of the State. However, I deem it unnecessary for me to undertake to detail the testimony. The judgment of a majority of its members is the judgment of the Court.